# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| PAULA BROWN,<br><br>                Plaintiff,<br><br>vs.<br><br>GREGORY M. CONSTANTINO;<br>CONSTANTINO LAW OFFICE, P.C.;<br>and DOES 1-20,<br><br>                Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br><br>Case No.  2:09CV00357DAK |

This matter is before the court on Defendants Gregory M. Constantino and Constantino Law Office, P.C.'s Motion to Dismiss Plaintiff's Utah Consumer Sales Practices Act ("UCSPA") claim.  A hearing on the motion was held on September 15, 2009.  Defendants were represented at the hearing by Gregory J. Sanders and Patrick C. Burt.  Plaintiff was represented by Brian W. Steffensen. The court has carefully considered the parties' memoranda and the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Paula Brown brings this action against Defendants, a Utah attorney and Utah professional corporation, alleging that Defendants' actions associated with attempting to collect a debt owed by Plaintiff on a Sears account were unlawful. Plaintiff alleges in her Complaint that Defendants (1) sent a demand letter to her on August 28, 2008, in which Defendants misrepresented the nature, character and/or

amount of debt supposedly due, the interest rate, the date interest began to accrue on the alleged balance past due, the date of last payment, as well as improperly demanded "collection fees"; (2) failed to provide Plaintiff with notices of debt collection within five (5) days as required by the Fair Dept Collecion Practices Act ("FDCPA"); (3) had a telephone communication with Plaintiff in which Defendants reiterated these same allegedly false and improper claims; (4) failed to respond "properly" to Plaintiff's demand for validation or verification of debt, but rather continued with collection activities; (5) failed to respond to a later demand for verification of debt by Plaintiff's attorney; (6) filed a Complaint against Plaintiff which contained the same allegedly erroneous information as did the demand letter and telephone call; and (7) reported negative credit information about Plaintiff. Plaintiff further alleges that Defendants regularly engage in the collection of consumer debt.

Plaintiff specifically alleges that the reporting of negative credit information is a violation of the UCSPA, but also generally alleges that the "actions alleged and complained of" violate the UCSPA. Based on these statements, Plaintiff alleges that the same conduct alleged to be FDCPA violations also constitutes separate violations of the UCSPA.

## DISCUSSION

Defendants move this Court, pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings regarding Plaintiff's UCSPA claim. Specifically, Defendants argue that the UCSPA claim should be dismissed because attorneys are not proper defendants under the UCSPA and defendants are absolutely immune from such a claim under the judicial proceedings privilege.

When presented with the question whether to grant a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), this court first looks to the complaint. *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005). The court accepts as true all well-pleaded factual allegations in the complaint and views these allegations in a light most favorable to the nonmoving party. *Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240 (10th Cir. 2003). A motion for judgment on the pleadings will only be granted where it appears that the "plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." *Id*.

### A. Application of UCSPA to Attorneys

Defendants first argue that they are "not proper defendants" under the UCSPA. The UCSPA is meant to prohibit "suppliers" who act "in connection with . . . consumer transaction[s]" from engaging in any "unconscionable act or practice," Utah Code Ann. § 13-11-5 (1953), or any "deceptive act or practice." *Id*. § 13-11-4. In order to be governed by the UCSPA, an attorney or law firm must first meet the statutory definition of a "supplier" and must also be acting "in connection with a consumer transaction."

The UCSPA defines a "supplier" as "a seller, lessor, assignor, offeror, broker, or other person who *regularly* solicits, engages in, or *enforces consumer transactions*, whether or not he deals directly with the consumer." *Id*. § 13-11-3(6) (emphasis added).

Utah courts have not addressed whether the UCSPA applies to attorneys who regularly engage in the collection of consumer debt. While Utah courts have not been presented with this issue, this court has applied the UCSPA to attorneys in at least one prior case. *Heard v. Bonneville Billing and Collections*, No. 2:97-CV-445C, Order n.4 (D. Utah Nov. 30, 1998) (unpublished) (noting that the court had "previously determined

3

that [attorneys] are 'suppliers' and that collection of dishonored checks is a 'consumer transaction' for purposes of the Utah Consumer Sales Practices Act"). The determination of whether the attorneys were suppliers under the UCSPA was not contested on appeal, but the Tenth Circuit upheld the district court's ruling that the attorney defendants violated the UCSPA. *Heard v. Bonneville Billing and Collections*, 216 F.3d 1087 (10th Cir. 2000) (unpublished).

The UCSPA provides no statutory exemption for attorneys. Rather, it instructs that the Act is to be "construed liberally." *Id*. § 13-11-2. In addition, the UCSPA is a uniform law and one of the express purposes of the Act is to "make uniform the law" with regards to consumer protection among those states enacting similar laws. *Id*. § 13-11-2(5). Utah, Ohio, and Kansas have consumer protection laws derived from the same Uniform Consumer Sales Practices Act. 7A *Uniform Laws Annotated*, 9 (Supp. 2009). While Kansas has not been confronted with this question, Ohio already has "well settled law" showing that attorney debt collectors can be liable under its statute. *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783 (S. D. Ohio 2006).

Under decisional authority construing the Ohio Consumer Sales Practices Act ("OCSPA"), an attorney who "regularly engages in the collection of consumer debt" is a "supplier." *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783 (S.D. Ohio 2006) (attorney qualified as a "supplier" under OCSPA because he engaged in the business of collecting consumer debts); *Keefer v. Wiles, Boyle, Burkholder & Bringarder*, 2008 WL 4404295 (S. D. Ohio 2008) ("This Court has held that, under well-settled Ohio and federal law, entities who engage in the business of collecting consumer debts are suppliers under the OCSPA").

4

The Sixth Circuit has recognized that the "definition of a 'supplier' under the Ohio Act is substantially broader than the definition of a 'debt collector' under the FDCPA." *Schroyer v. Frankel*, 197 F.3d 1170, 1177 (6th Cir. 1999). But, for purposes of determining whether an attorney is "engaged in the business of effecting or soliciting consumer transactions" under the OCSPA's definition of a "supplier," Ohio courts use an analysis similar to that used to determine whether an attorney is a "debt collector" under the FDCPA. *Id.* For example, a plaintiff must show "more than one isolated occurrence, especially when the occurrence is not within the usual course of business. The phrase has generally been held to mean continuous or regular activity, not a single isolated occurrence." *Id.* (quoting *Renner v. Derin Acquisition Corp*. 676 N.E.2d 151, 159 (Ohio App. 1996). No Ohio court has explained in detail the specific level of business activity necessary to label an attorney as one "engaged in the business of debt collection." *See Renner*, 676 N.E.2d at 159. But courts should ask the following question: "Did debt collection activities fall within Defendants' regular and usual course of business so that they were 'engaged in the business of' debt collection?" *Id*. This same question is also asked in determining whether an attorney is a "debt collector" under the FDCPA. *Id*.

Acts of debt collection that are only *incidental* to the practice of law will not make an attorney a "supplier" within the meaning of OCSPA. *See*, *e.g*., *Schroyer* 197 F.3d at 1178; *Renner*, 676 N.E.2d at 159 (finding that attorney who sent demand letter on behalf of client for payment was not a "supplier" as proof was lacking that defendant sent such letters in the regular course of business). Attorneys in Ohio who are regularly engaged in collecting consumer debts, not merely incidental to their practice of law, but

5

as a usual and regular practice, will be both a "debt collector" within the meaning of the FDCPA and a "supplier" under the OCSPA. *Schroyer*, 197 F.3d at 1177.

Kansas has not had to face the issue of whether an attorney engaged in the business of collecting debts is governed by its consumer sales practices statute. But it has held, interestingly, that an independent debt collection agency falls within the definition of a "supplier" under its Act. *See Miller v. Midwest Service Bureau of Topeka, Inc.*, 623 P.2d 1343 (Kan. 1981). Thus Kansas recognizes that debt collection activity falls within its law.

In this case, Defendants argue broadly that the UCSPA does not apply to attorneys rather than arguing that it should not apply to them particularly. Plaintiff, however, specifically alleges in her Complaint that Defendants "regularly engage in the collection of consumer debt." The court concludes that under the UCSPA this allegation is sufficient at the pleading stage. Defendants have not refuted the allegation. Moreover, Defendants do not dispute that the debt was incurred as a result of a consumer transaction.

In light of the statutory mandate to construe the UCSPA "liberally," coupled with the absence of any language exempting attorneys or law firms from its coverage, the court finds that attorneys and law firms that are regularly engaged in the business of collecting consumer debt can be suppliers under the UCSPA. Defendant's motion for judgment on the pleadings is, therefore, denied on this basis.

### B. Judicial Proceedings Privilege

Defendants next argue that Plaintiff's UCSPA claim should be dismissed because they are entitled to immunity from such a claim under the judicial proceedings privilege. Utah

6

courts recognize a judicial proceedings privilege, the express purpose of which is to "ensure free and open expression by all participants in the judicial proceedings by alleviating any and all fear that participation will subject them to the risk of subsequent legal actions." *Bennett v. Jones*, *Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 77, 70 P.3d 17 (quoting *Price v. Armour*, 949 P.2d 1251, 1258 (Utah 1997).

The judicial proceedings privilege originally arose in the context of defamation claims. *Price*, 949 P.2d at 1258. But Utah courts have since expanded the privilege to bar other common law claims. *See id*. (intentional interference with business relations); *Foster v. Saunders*, 2005 UT App 264 (slander of title); *Debry v. Godbe*, 1999 UT 111, ¶ 25, 992 P.2d 979 (intentional infliction of emotional distress); *Moss v. Parr Waddoups Brown Gee & Loveless*, 2008 UT App 405, n.1, 197 P.3d 659 (abuse of process, invasion of privacy, trespass to land and chattels, conversion, and civil conspiracy).

To establish a defense based on the judicial proceedings privilege, the privileged statements must be: (1) "made during or in the course of a judicial proceeding"; (2) "have some reference to the subject matter of the proceeding"; and (3) be "made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Debry v. Godbe*, 1999 UT 111, ¶ 11, 992 P.2d 979 (quoting *Price*, 949 P.2d at 1256); *See also*, *Allen v. Ortez*, 802 P.2d 1307, n.8 (Utah 1990).

To support their argument that the privilege bars Plaintiff's UCSPA claim against them, Defendants assert that this court has already held that the judicial proceedings privilege barred a UCSPA claim in *Johnson v. Riddle*, 2007 WL 528719 (D. Utah 2007). But *Johnson* does not deserve the weight Defendants give it. In *Johnson*, Judge Stewart issued an Order and Memorandum Opinion holding that the judicial proceedings

7

privilege applied "to all claims arising from qualifying statements," including UCSPA claims. *Johnson*, 2007 WL 528719 at *3.  But after Judge Stewart issued the Order, the plaintiff in that case filed a "Motion to Alter or Amend Judgment" arguing that the privilege had never been applied to bar *newly created statutory claims* – claims that did not merely codify common law principles. *See* 2007 WL 1732400 (D. Utah June 14, 2007). Based on the plaintiff's motion, Judge Stewart certified the question of whether the judicial proceedings privilege would bar UCSPA claims to the Utah Supreme Court. *Id*. He stated,

> As noted in the February Order, "our job is to predict how [the Utah Supreme Court] would rule." The Court finds, after reviewing the memoranda submitted, that it cannot do so here. On one hand, the Utah Supreme Court case of *Bennett v. Jones, Waldo, Holbrook & McDonough*, may be read as holding that the judicial proceedings privilege applies against statutory claims . . . However, the Utah Supreme Court also noted in the case that the statute at issue did "not create a separate and distinct cause of action, but rather merely provid[ed] for treble damages for a [common law] cause of action."
>
> In short, while broadly stating that the "judicial proceeding privilege extends not only to defamation claims but to '*all claims* arising from the same statements[,]'" the Utah Supreme Court has never addressed the privilege in the context of a newly created statutory cause of action. . . . The Court believes that the Utah Supreme Court is best suited to settle this issue. Accordingly, the Court will grant Plaintiff's Motion for the purposes of certifying the question.

The parties in the *Johnson* case settled before the Utah Supreme Court could determine the matter. Thus no Utah court has definitively answered whether the judicial proceedings privilege bars UCSPA claims.

However, the Utah Supreme Court has never used the judicial proceedings privilege to bar a newly created statutory cause of action such as the UCSPA. All claims barred by Utah courts have been common law claims or claims that were simply a codification of the common law. *See e.g.*, *Bennett v. Jones*, *Waldo, Holbrook & McDonough*, 2003 UT 9, ¶ 73, 70 P.3d 17 (holding that deceit claim brought by Plaintiff under Section 78-51-31 did not "create a separate and distinct cause of action, but rather merely provide[d] for recovery of treble damages for a cause of action for the common law tort of deceit in a civil action").

It is well-settled law that the judicial proceedings privilege cannot bar claims brought under the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) (holding that FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, *even when that activity consists of litigation*"). Similarly, a recent Sixth Circuit case declined to use the judicial proceedings privilege to bar claims brought under the OCSPA against an attorney. *See Hartman v. Great Seneca Financial Corp.*, 569 F.3d 606, 608 (6th Cir. 2009) (declining to use judicial proceedings privilege to bar FDCPA claims or OCSPA claims against debt collector attorney).

Because claims brought under the FDCPA are not barred by the judicial proceedings privilege, it is logical to conclude that UCSPA claims are similarly not barred. Considering that Utah courts have only formerly found common law claims barred by the judicial proceedings privilege, and noting that a Utah court has never used the privilege to bar a newly created statutory cause of action, like the UCSPA claim brought by Plaintiff, the court concludes that the judicial proceedings privilege does not

9

bar Plaintiff's UCSPA claim. Accordingly, the court denies Defendants' motion for judgment on the pleadings with respect to Plaintiff's UCSPA claim.

## CONCLUSION

Based on the above reasoning, Defendant's Motion for Judgment on the Pleadings as to Plaintiff's UCSPA claim is DENIED.

DATED this 26th day of October, 2009

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

10